UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

_In re_:                                    Case Number: 14-12042-7

      CATHERINE A. HENRICKS,

          Debtor.

## **MEMORANDUM DECISION**

This matter involves issues of property of the estate, exemption rights, Wisconsin marital property law,[1] the discharge injunction, and claims against a non-debtor spouse for criminal restitution. Catherine A. Henricks ("Catherine") filed a voluntary chapter 7 petition in 2014.[2] Her husband did not join in the bankruptcy filing.

The United States of America (the "Government) took action in district court for contempt against Catherine's husband, John Henricks ("John"). It sought to collect from sequestered property, tax refunds, and Catherine's pension. These actions led to the filing of an adversary proceeding for declaratory judgment related to the automatic stay. Following decisions in the district court and the discovery of a judgment lien against her homestead,

---

[1] Wisconsin is a community property jurisdiction. Unlike other community property jurisdictions, the Wisconsin statutes use the term "marital property" as an alternative term for "community property." Throughout this opinion both terms will appear because the Code uses the term "community property" as do some of the cited decisions, but state law uses the term "marital property."

[2] ECF No. 1, filed May 6, 2014.

Catherine returned to this Court seeking contempt remedies for violations of the automatic stay and discharge injunction.

### BACKGROUND

Catherine and John married in 1994. In June 2013, John was charged with crimes, including mail fraud. In August 2013, John entered a guilty plea to mail fraud. In September 2013, Catherine and her father obtained a loan to purchase a home in Portage County at 411 Oak View Meadow, Amherst, Wisconsin ("Amherst Property"). The loan was secured by a mortgage on the Amherst Property.[3] Catherine and her father were the only names on the title.[4]

John was sentenced to prison and ordered to pay restitution of $1,306,608.72. A judgment in the criminal case was entered against him in January 2014.

Within two weeks, Catherine filed for divorce. About two weeks after, the Government docketed the criminal case judgment against John in Portage County.[5]

---

[3] ECF No. 144, Exh. 1.

[4] Although no deed has been submitted into evidence, the parties do not appear to dispute this fact.

[5] Catherine does not dispute this date. *See* ECF No. 139 at 10. ("As was its right, the United States filed a Notice of Lien for Fine And/Or Restitution in the office of the Portage County Register of Deeds on February 7, 2014….")

Catherine then filed her bankruptcy. The Government admits it learned

of the bankruptcy the next day.[6] Catherine filed her schedules.[7] She exempted

$9,592.32 of the 2013 tax refund,[8] the full amount of her "BMO Retirement

Services – 401K,"[9] and $11,500.00 in the Amherst Property.[10] There were no

objections to her exemptions.[11] No nondischargeability actions were filed.

Catherine received a discharge. A discharge order was entered.[12] The discharge

injunction was modified "to permit the parties to seek a determination . . . of

whether or not any property in which Debtor claims an interest (regardless of

---

[6] Case No. 15-5, ECF No. 21 at 4. While Catherine asserts the Government was made aware earlier than this, the dispute is no longer relevant, and knowledge will be imputed to the Government from May 7—the time they concede they learned of the bankruptcy. Timing of the notice was only important for alleged violations of the sequestered property. Since it was determined that Catherine had no interest in the sequestered property, the disputed timeline is irrelevant. The Government does not dispute having notice of the bankruptcy from May 7 forward.

[7] ECF No. 14. The exempted assets at issue appear on page 10 of the pdf.

[8] ECF No. 14, Sch. C. The 2013 tax return value was listed as $18,537.00. She listed the exemption values as $499.05 and $9,143.27 for the total of $9,592.32. This total is $300.00 more than "half" of the return. In other words, half of the asserted value is $9,268.50 and Catherine's exemption exceeds that by $323.82. At any rate, there were no objections, so the exemption is taken as put forth in the schedules.

[9] ECF No. 14, Sch. C. The value of the 401K was asserted as $134,660.20.

[10] ECF No. 14, Sch. C. Catherine notes "partial ownership" of the property but does not explain what amount she owns. Catherine listed the "value of Catherine's interest in the property" before secured claims as $153,600.00 (but the description of the property states that the full value is listed).

[11] This means those assets would no longer be property of the estate on July 31, 2014, since parties in interest would have through July 30 to object. Although initially included in "property of the estate," once a debtor asserts exemptions parties in interest have 30 days to object. *See* Fed. R. Bankr. P. 4003. If no timely objection is made, the exempted property is no longer part of the bankruptcy estate. *Owen v. Owen*, 500 U.S. 305 (1991), *superseded by statute on other grounds*.

[12] ECF No. 89, entered January 7, 2015.

whether or not it was secured or sequestered . . . ) is individual or community property of the estate.[13]

The Government filed a motion and brief for determination of property interests in John's criminal proceeding. Catherine filed a motion and brief in response. A week later, Catherine filed a motion for contempt in this Court alleging the Government had violated the discharge injunction.

While not disputing Catherine's exemptions in this Court, the Government, as part of its motion in district court to find John in default of his restitution obligation, sought 100% of both the income tax refund and the retirement account. The Government contended that Catherine did not have a legitimate marital interest in any of her retirement or in the tax refund. Instead, it argued the entire amounts should be recovered as part of the restitution order. Alternatively, they argued that she had been unjustly enriched and therefore the Government should be able to recover the entire tax refund and pension. It asserted that the discharge injunction "does not apply" to such assets. ECF No. 139-26, ¶4.

After receiving her discharge Catherine filed an adversary proceeding against the Government for violating the automatic stay. She also sought to prevent continued action which would violate the discharge injunction, for declaratory judgment on lien rights, and to require release of Catherine's property.

---

[13] ECF No. 105.

The Court modified the automatic stay.[14] Upon reconsideration, the Court entered an amended order clarifying the stay modification to permit the district court to determine Catherine's interest in non-sequestered property as well. If sequestered property was individual or marital, Catherine was entitled to return to this Court for a determination of damages, costs, and fees. If none of the sequestered property was so classified, the Government was entitled to return to seek an order and judgment that no stay or discharge injunction violation occurred.[15] The order did not address whether action by the Government to collect from non-sequestered property in which Catherine had an interest may be a violation.

The district court decided the classification of the sequestered property, the tax refund, and the pension. Following various appeals, a final decision was issued by the district court. The decision found:

- The sequestered property was not community property and was available for payment of John's restitution.

- John was entitled to one-half of the federal tax refund attributable to Catherine's earnings ($2,708.46) and to one-half of the child tax credit ($500.00) as his community property interest. The balance of those amounts are Catherine's one-half interest in community property.

- Catherine was entitled to one-half of her retirement fund "which was funded entirely by contributions she made to the fund from her earnings (together with earnings on those contributions)."[16]

---

[14] Case No. 15-5, ECF No. 30; ECF No. 31.

[15] Case No. 15-05, ECF No. 37.

[16] ECF No. 139-52 at 12, ¶¶ 3-4.

On top of the above actions is the position of the Government related to the Amherst Property. The Government filed a Notice of Lien in the Portage County Register of Deeds Office. It asserted a lien in the amount of $1,306,608.72. This filing affected title to the Amherst Property.

After the final determination of the United States' Motion to Determine Catherine Henrick's Property Interest in Assets and to Determine the Amount of the Restitution the United States Can Recover from Those Assets, Catherine Henricks sought to refinance the loan on the Amherst Property. The house is co-owned with her father. Most of the down payment was made by Catherine's father. The mortgage was in the original amount of $149,600.00.[17] This amount was unchanged when Catherine's bankruptcy was filed and when Catherine and John were granted a divorce.[18]

Attempting refinancing, Catherine learned the title company believed the restitution lien arising from the judgment against John impaired the title to Catherine's home. She asked that the United States execute a partial release of her home from the judgment lien. It refused to do so. So its position appears to be that it has a right to maintain a lien. It also appears it believes all of Catherine's interest in the property is marital (community) property and that property is available for its lien despite the fact she has no personal liability for the judgment against John.

---

[17] ECF No. 144-1.

[18] ECF No. 14 at 3 and ECF No. 139-20 at 8.

The record suggests the value of the Amherst Property is $153,600.00.[19] If correct, less the mortgage, there would be gross equity of $4,000.00. Putting aside consideration of possible adjustments to the equity for the source of payment, that would mean Catherine's interest in the Amherst Property is no more than $2,000.00. If the Government is entitled to any portion of the equity, it would be limited to one-half of Catherine's interest—$1,000.00 plus any possible appreciation to the date of the divorce. Further, if for this calculation Catherine's interest were limited to her contribution to the down payment, the one-half interest attributable to community property would be reduced to $1,000.00, thus reducing John's interest to $500.00. It does not appear, however, that these amounts changed because the values identified in connection with the divorce confirm the same calculation.

## I.    APPLICABLE STATUTES

### 11 U.S.C. § 362 (a), (c)

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

---

[19] ECF No. 14 at 3 and ECF No. 139-20 at 8.

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

(c) Except as provided in subsections (d), (e), (f), and (h) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

## 11 U.S.C. § 524(a)

A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1192, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

## Wis. Stats. § 766.31    Classification of property of spouses.

. . .

(3) SPOUSE'S INTEREST IN MARITAL PROPERTY. Each spouse has a present undivided one-half interest in each item of marital property.

. . .

(7) INDIVIDUAL PROPERTY AFTER DETERMINATION DATE. Property acquired by a spouse during marriage and after the determination date is individual property if acquired by any of the following means:

(a)  By gift during lifetime or by a disposition at death by a 3rd person to that spouse and not to both spouses. A distribution of principal or income from a trust created by a 3rd person to one spouse is the individual property of that spouse unless the trust provides otherwise.

. . .

(c)  From appreciation of the spouse's individual property except to the extent that the appreciation is classified as marital property under s. 766.63.

(d)  By a decree, marital property agreement or reclassification under sub. (10) designating it as the individual property of the spouse.

## II.    DISCUSSION

### A.    JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The issue before the Court relates to the automatic stay and alleged violation of it under 11 U.S.C. § 362, as well as alleged violations of the discharge injunction, implicating 11 U.S.C. §§ 524 and 105. It falls within the parameters of "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2)(O).

### B.    PROCEDURE

Before addressing the merits, it is necessary to address the stay/discharge modification. The Government asserts:

[Catherine] inappropriately seeks an order from this Court to "reinforce" a finding that the government violated the automatic stay by filing its Default Motion in her ex-spouse's criminal case. [Catherine]'s argument is undeveloped and relies on no legal authority, aside from a blanket citation to 11 U.S.C. § 362 . . . . Her

10

request for relief, however, is more problematic for another reason:
[Catherine] asks for relief in her Amended Motion that she never
obtained in the adversary proceeding in the first instance.

ECF No. 144 at 11. The Government argues that they are entitled to an order

confirming there was no violation of the automatic stay or discharge injunction

because the district court found Catherine had no legitimate interest in the

sequestered property. The Government relies on the language from the

Amended Order:

> 4. If the District Court or another court of competent jurisdiction
> determines that none of the property secured (sequestered) by the
> Defendant is individual property of [Catherine] or community/
> marital property, the Defendant can return to the bankruptcy court
> for an amended order and judgment determining that no violation
> of the automatic stay or of the discharge injunction has occurred.

Adv. Proc. No. 15-5, ECF No. 37.

The Government had a right to return for an amended order and

judgment as it related to sequestered property. They did not do so. However,

the issues before this Court include more than just the sequestered property.

Catherine's complaint raised not only the sequestered property, but also

the Government's actions in seeking restitution from marital property.[20]

Catherine moved for summary judgment on the issue of both sequestered and

non-sequestered property. In the summary judgment motion, Catherine

asserted her interests were established by the property division from the

divorce. The Amherst Property was addressed in the divorce as well as in her

claim of exemptions in this Court.

---

[20] Adv. Proc. No. 15-5, ECF No. 1 at ¶11.

The Government argued the marital estate had been unjustly enriched by John's criminal activities and, if so, whether Catherine was even entitled to 50% of the marital assets.[21] Asserting the assets—including the tax refund, pension, and Amherst property—were either paid for or preserved by proceeds of John's crimes, the Government took the position Catherine had no legitimate interest in the assets.[22]

The Court found that the property division from the divorce did not address classification of Catherine's interests—only the division of property. But the Court further found that it was not the proper forum to make the necessary determinations. Instead, those were matters more efficiently addressed by the district court. The Court did *not* find that any Government attempt at collecting from non-sequestered property for restitution would not violate the stay.

In fact, the opposite holds true. The Court found that any attempt to collect from Catherine's interests in property would violate the automatic stay. Although the Amended Order only explicitly references sequestered property, the law and application of it remains the same for the non-sequestered property. The Government is correct it is entitled to an amended order confirming that any collection efforts relating to the *sequestered* property did not violate the stay. But Catherine is no longer asserting that such acts

---

[21] Case No. 15-5, ECF No. 21 at 5.

[22] *Id.* at pp. 11-12.

violated the stay. Instead, she seeks relief for actions involving the non-sequestered property.

Requesting relief for violating the automatic stay does not require an adversary proceeding. *See In re* Ballard, 502 B.R. 311 (Bankr. S.D. Ohio 2013). The Court may grant relief under sections 105 and 362 of the Code. The Rules permit a party to seek relief by motion. Fed. R. Bankr. P. 7001, 9014, and 9020; *Standard Indus., Inc. v. Aquila, Inc. (In re C.W. Mining Co.)*, 625 F.3d 1240 (10th Cir. 2010). Similarly, relief for a violation of the discharge injunction may be brought by motion.[23] *See Kilbourne v. CitiMortgage, Inc. (In re Kilbourne)*, 507 B.R. 219, 223 (Bankr. S.D. Ohio 2014) (citing Fed. R. Bankr. P. 9020 and 9014, "[T]he traditional way to bring an action for contempt is by motion."); *Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1326 (11th Cir. 2015); *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1189 (9th Cir. 2011). So the matter is properly before the Court.

### C.    PROPERTY OF THE ESTATE

Turning to the merits, the Court now determines what was property of the estate. Although Catherine commenced divorce proceedings before filing her bankruptcy, no divorce decree had been entered when she filed her bankruptcy.

---

[23] The reason the adversary proceeding was required and filed was that the relief sought was a declaratory judgment. Such relief did require an adversary. But the requested relief before the Court is not a declaratory judgment.

13

The petition created a bankruptcy estate that consists of "all legal and equitable interests of the debtor." 11 U.S.C. § 541. Property rights are determined under state law. *Butner v. United States*, 440 U.S. 48 (1979). Catherine and John were both domiciled in Wisconsin for the relevant period. As a result, the property interests are determinable under Wisconsin law. Wisconsin is a "community property" state. Under the Wisconsin Marital Property Act, both the debtor and her husband have an "undivided one-half interest in each item of marital property." *See* Wis. Stat. § 766.31(3); *In re Griffith*, 449 B.R. 909, 910 (Bankr. W.D. Wis. 2011). John's interest in marital property becomes part of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(2), which provides that the estate includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of a case."

Although there is a presumption that all property of the spouses is marital property, there are exceptions. For example, property received as a gift is individual property. Wis. Stat. § 766.31(7)(a). And with certain exceptions, appreciation of individual property remains individual. Wis. Stat. § 766.31(7)(c). Further, property can become mixed property comprised of both individual and marital components. Wis. Stat. § 766.63.

If the component of the property that is not marital property can be traced, it remains individual property. Wis. Stat. § 766.63(1); *In re Landsinger*, 490 B.R. 827, 830 (Bankr. W.D. Wis. 2012). As explained by *Landsinger*:

> Under Wisconsin law, "mixing marital property with property other than marital property reclassifies the other property to marital

14

property unless the component of the mixed property which is not marital property can be traced." . . . Mixing can also occur when there is an appreciation in value due to "substantial labor, effort, inventiveness, physical or intellectual skill, creativity or managerial activity." . . . The burden to establish mixing is properly assigned to the claimant that the property was mixed—in this case, the debtors. . . . After this initial burden is met, the burden of establishing tracing is on the party seeking to avoid reclassification as marital property . . . The nonmarital asset is reclassified as marital property "unless the component of the mixed property which is not marital property can be traced."

*Id.*

Because Catherine remained married when the petition was filed, "property of the estate" consisted of all Catherine's individual property and all marital property. The district court made the following property determinations:

- Ms. Henricks had no marital property interest in AJ's Auto Body.

- Ms. Henricks is entitled to one-half of the value of the Foster & Smith retirement account.

- Ms. Henricks is entitled to one-half of the value of the 2013 tax refund attributable to her earnings at Foster & Smith.

*Decision from District Court dated September 20, 2018*, Case No. 13-83 ("*Property Determination*").

In making this finding, the district court recited the Government's tracing of criminal proceeds, income sources from the 2013 tax refund, and source of funds in the retirement account. In determining Catherine had no legitimate interest in the sequestered assets, the court found that "under Wisconsin law, property acquired by fraud cannot meet the definition of

'income earned or accrued' under Wis. Stat. § 766.31(4)." *Id.* at 9. The Government thus demonstrated its ability to trace.

Similarly, in making the determination about the retirement account and 2013 tax return, the court analyzed and applied the statute noting, however, that John's "earnings" made possible by the use of stolen property did not meet the definition of "property" under Wisconsin marital property law. The district court did not address the Government's argument there was unjust enrichment.

The district court's decision addressed specific assets including the tax refund and Catherine's pension. The Amherst Property was not a subject of any motion by the Government or that decision. The district court did, however, note that future collection actions were not barred by its decision. Such actions could be pursued to the extent of John's interest. ECF No. 139-52 at 7. Thus, there is no binding determination relating to the Amherst Property.

Catherine asserts the Amherst Property is individual property and her one-half interest in the property is solely hers. The Government asserts it is marital property.

The threshold determination is whether the Amherst Property is property of Catherine's bankruptcy estate. There is no doubt about the answer to this question. Whether individual property of Catherine or marital property, it was property of the estate.

Whether Catherine's interest in that property is other than a one-half interest is not established in the record. It appears, based on arguments of the

parties, that the Court should assume for the purpose of this decision that she

holds a 50% interest in the Amherst Property. Whether her ownership is other

than 50-50 is a matter for further evidence if there is a dispute about her

percentage of the ownership.[24]

Assuming that Catherine owns one-half of the Amherst Property, the

analysis of the classification and value of that interest must also be addressed.

Catherine's schedules list the value of the property as $153,600.00. ECF

No. 14 at 3. There was a mortgage in the amount of $149,600.00. *Id.* This

means that on the petition date there was $4,000.00 equity in the property.

One-half of that amount is $2,000.00. So on the petition date, the evidence

suggests there was only equity of $2,000.00 as property of the estate. If, as the

submissions here suggest, Catherine contributed $1,000.00 to the down

payment, tracing rules mean that the marital property component of her

interest in the property was $1,000.00 on the petition date. Any other equity is

her individual property since there is no evidence it came from any marital

property source. In fact, it was contributed by her father making her interest in

any amount greater than $1,000.00 a gift. Further, based on the record

submitted, the only payments made up to the date of Catherine's divorce were

payments of interest. There is no evidence of any appreciation in the value of

the property to the date of divorce.

---

[24] Catherine and her father jointly hold title. Because no copy of a deed or title report
evidencing the exact title are in the record, the Court cannot make a specific finding of
any ownership but assumes for the purpose of this decision it is 50-50.

Mixing marital property with individual property does not reclassify the individual property to marital property if the individual property can be traced. *See* Wis. Stats. § 766.63(1). The record establishes that marital property—$1,000.00—was mixed with any additional interest she acquired through the down payment from her father (individual property as a result of a gift). The record is enough to trace that amount and identify its marital and individual components. The Government is aware Catherine says some of the down payment was a gift from her father. No evidence has been presented indicating Catherine contributed more than $1,000.00.

As noted by the district court in its decision, John would have only a one-half interest in that equity. In other words, the marital property component of John that may be subject to a restitution claim would be no more than $500.00.

The analysis does not, however, end at this point. Next, the point when the property no longer is property of the estate and the import of that time must be considered. In Wisconsin, debtors have a right to exempt assets under state or federal exemptions. Property that may be exempt still initially becomes property of the estate upon the filing of a petition. Once a debtor asserts exemptions, parties in interest have 30 days to object. *See* Fed. R. Bankr. P. 4003. If no objection is made within that time, the debtor's asserted exemptions are no longer property of the estate. *See Owen v. Owen*, 500 U.S. 305 (1991), *superseded by statute on other grounds.* This holds true even if the

debtor "had no colorable basis for claiming the exemption." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 639 (1992).

Catherine claimed exemptions on May 30. She exempted slightly over one-half of the 2013 tax refund, her entire retirement account, and $11,500.00 in the Amherst Property. No one—including the Government—objected. The property subject to those exemptions was no longer property of the estate beginning on July 31, 2014. Catherine and John were granted a divorce on February 10, 2015, and the Amherst Property was awarded to her.

That Catherine's interest in the Amherst Property was no longer property of the estate does not mean that the Government as a lien creditor can reach those assets. This is because (1) the stay encompasses individual property of the debtor, and (2) the Code provides, with some exceptions, that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case." 11 U.S.C. § 522(c).

The argument that unjust enrichment is not a basis is artful although not persuasive. Under Wisconsin marital property law, one spouse is not responsible for the other spouse's criminal fines, forfeitures, or order of restitution, and only one-half of the community property may be recovered to satisfy such obligations. Keith A. Christiansen, F. William Haberman, et al., *Marital Property Law in Wisconsin*, Vol. II, Ch. 6, p. 27 § 6.21 (State Bar of Wisconsin 4th ed. 2010). Any attempt to seek recovery or refuse to release a

lien for the entire amount of the restitution claim or more than one-half of the

possible marital property component—equity in the amount of $500.00—

intimates the claim that unjust enrichment for all of Catherine's interest or

value in the property is the basis for the Government's action. This is the only

explanation for the position of the Government because there has been no

argument that any equity or value in the property other than Catherine's

$1,000.00 contribution to the down payment came from marital property.

There is no evidence of any appreciation in the Amherst Property up to the date

of either Catherine's discharge or the divorce. While in its Sur-Reply the

Government argues the district court addressed appreciation in the Amherst

Property (ECF No. 146-1 at 6), this is imprecise. The quotation cited appears in

the discussion related to the A.J.'s Auto Body assets, including real property

that entity owned.

> As noted by the Court in *In re Schmiedel*:

> The difficulty in this case resides in the fact that the asset the [Government] is trying to recover from was owned by the debtor and her former spouse before the bankruptcy. The discharge injunction covers after-acquired community property, but the statute makes no mention of community property that was owned before the bankruptcy and passes through the bankruptcy estate as exempt property. This is apparently because, with certain exceptions peculiar to various state laws, all community property is included in the debtor's estate. Any nonexempt community property would be liquidated and distributed, and all that passes out of the estate is exempt community property.

*Id.,* 236 B.R. 393, 398 (Bankr. E.D. Wis. 1999).

> The entire value of a community property homestead claimed exempt is

protected by the interaction of sections 522(c) and 524(a)(3). The exempt

portion cannot be reached after the bankruptcy, as this is prohibited by section

522(c). If the value of the house increased after bankruptcy because of market

conditions or because the debtor reduced the outstanding mortgage, this

increase in value could be considered after-acquired community property

protected by the discharge under section 524(a)(3). Further, any community

property interest that John may have held terminated upon divorce and the

Amherst Property became Catherine's separate property upon the divorce. The

interest of John in that property was limited to any community property

interest he held on the date of divorce. The Government had an opportunity to

contest Catherine's claim of exemption or the value and did not do so. The

community property interest of John on the date of divorce was $500.00.

The federal exemptions claimed by Catherine, and listed in section

522(d), refer only to "the debtor's aggregate interest" in property claimed. She

could only claim her interest as exempt. *See In re Page*, 171 B.R. 349 (Bankr.

W.D. Wis.1994). John had an interest in the real estate when judgment was

entered against him. In 2014, the Wisconsin homestead exemption was

$75,000.00 for each spouse. So the Wisconsin homestead exemption would be

sufficiently broad to cover the entire equity interests of Catherine and John in

the Amherst Property. Wisconsin Statute § 815.20 grants an exemption of

$75,000.00 which "extends to land owned by husband and wife jointly or in

common or as marital property."

> If spouses live in the same household, the exemption may be divided
> between them, but these spouses did not. [Catherine] would be
> entitled to the entire exemption in the entire property,
> notwithstanding the fact that her estranged husband still had an

21

ownership interest. He might even have had a homestead interest in his own right, if he moved because of [his criminal charges and incarceration], but that need not be decided. In the state judgment context, and in the bankruptcy context if she chose to claim it, [Catherine] would be entitled to an exemption covering the entire property from both execution and liens. Any apparent lien can be removed from the chain of title under the statutory procedure if it is not removed after demand. Wis. Stat. §§ 815.20(2) & 806.04.

*In re Schmiedel*, 236 B.R. at 399.

The Government does not distinguish between the interests of Catherine and John. Catherine claimed all of the equity exempt. The question in *Stoneking*, after analyzing *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S. Ct. 1825, 114 L. Ed. 2d 337 (1991), was: "Can a debtor avoid a lien placed on a community property residence if the residence thereafter becomes debtor's separate property?" *Law Offices of Moore v. Stoneking (In re Stoneking)*, 225 B.R. 690, 692 (B.A.P. 9th Cir. 1998). As summarized by *Schmiedel*:

The court also noted that the creation of the lien was a separate event from the creation of a new property interest in the debtor. Because the debtor had a community property interest in the homestead when the lien attached, and the judicial lien attached while the property was still community property, the debtor could avoid the "fixing" of the lien on his exempt property. The fact that the debtor's interest was later augmented to fee simple did not negate the fact that the lien had affixed to an interest of the debtor in the property when it attached. Also, it appears to be irrelevant that the lien had also affixed to the nondebtor spouse's interest in the same property at the same time. The entire lien was necessarily avoided to preserve the debtor's exempt asset.

*In re Schmiedel*, 236 B.R. at 399.

Community property is owned entirely by both spouses. Wis. Stat. § 766.31(3). Community property is a unitary concept of ownership and debt satisfaction. All community property is property of the estate when one spouse

22

files a bankruptcy. Debts are treated based on their classification as either
community debts or the individual debts of one or the other spouse. John's
restitution judgment debt was his individual debt. Only in rare instances is
community property treated as if the spouses own fractional interests, such as
arose in *In re Page*, 171 B.R. 349. Even if the restitution claim were a
community debt, it would only be the community property interest of both
spouses—$2,000.00—that would be recovered to satisfy that debt. Here, the
community property available is also limited because John's restitution
obligation could reach only his interest in community property.

Both spouses' interests in community property are protected when a
bankruptcy is filed, and this includes avoidance of a judicial lien. The
restitution claim was prepetition as was the lien. It was filed 88 days before
Catherine's bankruptcy petition. This lien is avoidable to at least any interest of
Catherine. The timing of the later divorce of the debtor does not change that
result.

There is sufficient independent reason under bankruptcy law to avoid the
Government's lien, so reliance on amendment of the schedules and a
declaratory action under state law is not necessary. The facts in *Schmiedel*
(citing *In re Stoneking*, 225 B.R. 690 (B.A.P. 9th Cir. 1998)), are analogous to
this case. The reasoning in *Schmiedel* is persuasive.

As discussed, Catherine has an undivided one-half interest in the
community property interest in the Amherst Property. Catherine owns an
undivided one-half interest in half of the property. She does not own half of a

house. This interest cannot readily be partitioned. The "rational way to reconcile [the federal homestead exemption and Wisconsin marital property law] is to permit the debtor to exempt all of the equity in indivisible marital property assets, up to the statutory value limits for one debtor." *In re Xiong*, No. 05-43121, 2006 WL 1277129, at *3 (Bankr. E.D. Wis. May 3, 2006). Since she has an interest in the entire property, her aggregate interest for exemption purposes should logically extend up to the entire equity only as limited by the dollar limit of the exemption. Catherine is thus entitled to claim her entire interest and not just one-half as exempt up to the applicable exemptions. In this case, that amount is $11,500.00.

The trifling sum that was commingled with Catherine's individual property, the cost of selling real estate, the meager amount the Government would realize, the unchallenged exemption, and the injustice that would be created by a turnover, further support the conclusion that the Amherst Property is exempt as Catherine's individual property. Further, if an execution is issued to collect from a judgment debtor such as John, the law provides that it is property "in which the judgment debtor has a substantial nonexempt interest" that is subject to levy. 28 U.S.C. § 3203(a). Any interest John may have in the Amherst Property is not a "substantial nonexempt interest." The lien of the Government in property under a writ of execution is subject to an execution lien within the limits of property defined in that statute. 28 U.S.C. § 3203(b). The circumstances of this case are such as to require the *de minimis* commingling theory be applied by this Court. This is consistent with the legal

24

maxim, "*de minimis non curat lex.*" The law does not care for or take notice of very small or trifling matters." *Black's Law Dictionary* (6th ed. 1990).

Although the motion did not specifically mention 11 U.S.C. § 522(f)(1), the Debtor's motion made clear that she wished to remove the Government's lien from the Amherst Property. Since she is entitled under the facts to do so, the lien will be avoided. A separate order will be entered accordingly.

### D.    VIOLATION OF THE AUTOMATIC STAY

"Under the Bankruptcy Code, filing a petition for bankruptcy automatically 'operates as a stay' of creditors' debt-collection efforts outside the umbrella of the bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC,* 140 S. Ct. 582, 586 (2020). *See also* 11 U.S.C. § 362. The stay "gives debtors breathing room by stopping collection efforts and permitting their resumption only when the stay is lifted by the bankruptcy court or dissolved by operation of law." *Reedsburg Util. Comm'n v. Grede Foundries, Inc.*, 2010 WL 2159358, at *5 (W.D. Wis. May 24, 2010). It also allows for the orderly distribution of the estate. *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505 (7th Cir. 1982). "The statute applies not only to actions relating to property of a debtor's bankruptcy estate, but also to actions taken against the debtor individually *and to actions taken against property of the debtor*, as contrasted to property of the debtor's bankruptcy estate." *Radcliffe v. Int'l Painters and Allied Trades Indus. Pension Fund (In re Radcliffe)*, 372 B.R. 401, 411 (Bankr. N.D. Ind. 2007), *aff'd,* 563 F.3d 627 (7th Cir. 2009) (emphasis added).

Recovering damages for a stay violation requires the debtor prove, by a preponderance of the evidence, that: "(1) a bankruptcy petition was filed; (2) the debtor is an individual under the automatic stay provision; (3) the creditor had notice of the petition; (4) the creditor's actions were in willful violation of the stay; and (5) the debtor suffered damages." *In re Sori*, 513 B.R. 728, 732 (Bankr. N.D. Ill. 2014); *see also Johnson v. RJM Acquisitions, LLC*, Case No.11-CV-601, 2012 WL 930386 (S.D. Ill. March 19, 2012). "A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." *Radcliffe*, 563 F.3d at 631. In other words, "the term 'willful' refers to the deliberateness of the conduct, coupled with knowledge of the filing. It does not require an intent to violate the law." *In re Schafer*, 315 B.R. 765, 775 (Bankr. D. Colo. 2004). Unless otherwise modified by the court, the stay remains in effect from the filing of the petition to the entry of the discharge order. *See* 11 U.S.C. § 362. The stay took effect when Catherine filed her chapter 7 petition on May 6, 2014. As to the Government, it remained in effect until January 7, 2015.

The Government does not dispute that Catherine filed a bankruptcy petition. Nor does it dispute that it had actual knowledge of Catherine's bankruptcy for the relevant period.[25] In fact, the Government does not even

---

[25] As noted in footnote 15, while Catherine asserts the Government was made aware earlier than this, the dispute is no longer relevant, and knowledge will be imputed to the Government from May 7—the time they concede they learned of the bankruptcy. Case No. 15-5, ECF No. 21 at 4. Timing of the notice was only important for alleged violations of the sequestered property. Since it was determined that Catherine had no

dispute that it sought to collect from property of the estate. Rather, the Government contends that the actions it took did not violate the stay because it was not seeking any personal liability claim but only an *in rem* claim against property. Thus, the first three elements are satisfied, and the Court need only to look to whether the Government's actions were a willful violation of the stay and whether Catherine suffered damages.

The automatic stay applies to property of the estate and actions taken against the individual and individual property. As discussed above, property of the estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

The district court made the following property determinations:

- Ms. Henricks is entitled to one-half of the value of the Foster & Smith retirement account.

- Ms. Henricks is entitled to one-half of the value of the 2013 tax refund attributable to her earnings at Foster & Smith.

*U.S.A. v. John E. Henricks*, Case no. 13-83, Opinion dated September 20, 2018 (Catherine's Exhibit 54). This Court is bound by these findings.

Once the district court determined that Catherine had no interest in the sequestered property, the Government was entitled under the February 2016 Order to seek an amended order confirming that action to collect from or retain that property was not a stay violation. This Court granted a modification of stay to determine the classification of the sequestered property. The Government

---

interest in the sequestered property, the disputed timeline is irrelevant. The Government does not dispute having notice of the bankruptcy from May 7 forward.

proceeded to pursue a decision and collection from the tax refund and Catherine's retirement account. Those assets were not sequestered property.

When the government sought to collect from all of the tax refund and retirement account, they were "acting to collect." It was dressed, at first, as simply a request for classification of assets. Still, the goal was to collect and recover from a tax refund and retirement account that were property of the estate and not merely from John's one-half interest.

The Government provides no defense to the alleged stay violations beyond asserting the February 2016 Order did not grant summary judgment for anything related to non-sequestered property. This does not preclude a finding of a violation of the stay or discharge injunction.

The district court established that the retirement account came from wages Catherine earned as a full-time employee. She earned wages that were taxable and was the parent of a minor child that would entitle the claim of a child tax credit. Neither her wages nor the child tax credit were in any way traceable to John's crimes. The Government has demonstrated its ability to trace assets and contributions to assets as confirmed by its tracing of the proceeds of John's crimes. ECF No. 139-52 at 2. All the same, instead of tracing or attempting an allocation between the portion attributable to Catherine's earnings and that attributable to John's misdeed, the Government sought collection from 100% of the refund and pension. Eventually the Government did undertake tracing efforts with respect to the refund.

Catherine was married when she filed her petition. All of Catherine's individual property and her undivided one-half interest in marital property (effectively pulling in all marital property in which she had an interest) was property of the estate and protected by the automatic stay.

The automatic stay is not without limits. Courts have determined that the Mandatory Victims Restitution Act ("MVRA") supersedes the automatic stay. 11 U.S.C. § 3664A. *See United States v. Colasuonno*, 697 F.3d 164 (2d Cir. 2012); *United States v. Robinson (In re Robinson)*, 764 F.3d 554 (6th Cir. 2014); *Partida v. United States Dep't of Justice (In re Partida)*, 862 F.3d 909 (9th Cir. 2017). The parties do not dispute that, regardless of the stay, the Government could collect from *John's* individual property.

John's interest in marital property was also property of the estate. 11 U.S.C. § 541(a)(2). To the extent not exempt, it was available for distribution to what are known as community debts. As a result, although John's interest in the marital property was included in the bankruptcy estate, there was no violation of the stay when the Government tried to collect from *John's* individual property or his one-half interest in marital property.

Still, the parties dispute whether acts to collect property from Catherine would likewise be insulated from application of the automatic stay. The Government now bases its argument on a technical claim the prior order didn't address non-sequestered property and that it is merely seeking *in rem* collection; the argument is unpersuasive. The Code is clear, Catherine's discharge:

> (3)  operates as an injunction against the commencement or
> continuation of an action, the employment of process, or an act, to
> collect or recover from, or offset against, property of the debtor of
> the kind specified in section 541(a)(2) of this title that is acquired
> after the commencement of the case, on account of any allowable
> community claim, except a community claim that is excepted from
> discharge under section 523, 1192, 1228(a)(1), or 1328(a)(1), or that
> would be so excepted, determined in accordance with the provisions
> of sections 523(c) and 523(d) of this title, in a case concerning the
> debtor's spouse commenced on the date of the filing of the petition
> in the case concerning the debtor, whether or not discharge of the
> debt based on such community claim is waived.

11 U.S.C. § 524(a). This means that upon discharge the right of the

Government to pursue any of Catherine's interest in community property was

enjoined.

With some exceptions not at issue, enforcement of restitution ordered

under the MVRA provides, "[n]otwithstanding any other Federal law (including

section 207 of the Social Security Act), a judgment imposing a fine may be

enforced against all property or rights to property *of the person fined*." 18

U.S.C. § 3613(a) (emphasis supplied). The "person fined" is only John. This

analysis follows the district court's finding as well. *See* ECF No. 139, Exh. 18.

Enforcement of restitution does not extend beyond the "person fined." To

the point that the Government sought to collect from John's individual

property or his one-half interest in marital property, the MVRA provides an

exception to a claim of stay violation. But it doesn't afford such a shield against

a claim for attempts to collect from Catherine's interest in the marital property,

or Catherine's individual property interests. The MVRA does not apply to such

efforts because she was not a "person fined."

The automatic stay remained unaffected and in force for any actions to collect on Catherine's interests in property. Based on the district court's property determination (which was affirmed by the Seventh Circuit), Catherine had a one-half interest in her retirement account and 2013 tax refund. The Government was unwavering in its position it could collect from 100% of the retirement account and tax refund.

The Government's argument that they believed Catherine had no legitimate marital interest in *any* of the property is disingenuous. It knew she was employed full time. It knew she had a right to contribute to her company's pension plan and that the contributions were made from her earnings. The sources and amounts of taxable income were within the knowledge of the Government as were the claimed deductions. It knew that under Wisconsin law she had a right to a tax refund based on her earnings and that at least one-half of that amount was her marital property interest. The Government tacitly acknowledged this but ignored that fact when it argued, "It is also irrelevant that Catherine Henricks may have earned money legally during her marriage." Case No. 15-05, ECF No. 21 at 12.

The Government functionally acknowledged the pension and a portion of the tax refund attributable to the "wages" claimed by Catherine were property of the estate. It simply said it should be able to collect from it anyway. The inapplicability of the MVRA and 362(b) to Catherine was already made clear by the district court and reinforced by this Court. Even so, the Government

31

persisted. These actions satisfy the requirement that the creditor's actions were willful.

Once it is determined that a willful violation of the stay has occurred, the court must address the appropriate remedy. Under 362(k), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The parties have opted to bifurcate the motion for contempt. In doing so, the Court could determine the extent of the violation, if any, before the parties make arguments about appropriate damages and sanctions.

The Government acted to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" when they sought to recover restitution from 100% of the retirement account and tax refund, which the district court determined Catherine had a marital interest in. The Government's actions in doing this was not protected by other federal law such as the MVRA. In sum, the Government's position that "no limitation on recovery should apply"[26] is not one that invalidates the automatic stay arising under Title 11. Nor does the argument shield them from liability. There was a violation of the stay.

---

[26] Case No. 14-12042, ECF No. 139, Exh. 12 at 19.

E.    VIOLATION OF THE DISCHARGE INJUNCTION

In a chapter 7, upon the entry of the discharge order, the automatic stay

is terminated. 11 U.S.C. § 362(c)(2)(C). The stay is replaced with a discharge

injunction. 11 U.S.C. § 524. The discharge injunction precludes actions that

seek to establish or collect *personal liability* on a prepetition debt. *In re Taylor*,

793 F.3d 814 (7th Cir. 2015). More specifically:

A discharge in a case under this title--

(1)    voids any judgment at any time obtained, to the extent
that such judgment is a determination of the personal liability of the
debtor with respect to any debt discharged under section 727, 944,
1141, 1192, 1228, or 1328 of this title, whether or not discharge of
such debt is waived;

(2)    operates as an injunction against the commencement
or continuation of an action, the employment of process, or an act,
to collect, recover or offset any such debt as a personal liability of
the debtor, whether or not discharge of such debt is waived; and

(3)    operates as an injunction against the commencement
or continuation of an action, the employment of process, or an act,
to collect or recover from, or offset against, property of the debtor of
the kind specified in section 541(a)(2) of this title that is acquired
after the commencement of the case, on account of any allowable
community claim, except a community claim that is excepted from
discharge under section 523, 1192, 1228(a)(1), or 1328(a)(1), or that
would be so excepted, determined in accordance with the provisions
of sections 523(c) and 523(d) of this title, in a case concerning the
debtor's spouse commenced on the date of the filing of the petition
in the case concerning the debtor, whether or not discharge of the
debt based on such community claim is waived.

11 U.S.C. § 524(a). In Catherine's case, the discharge injunction, not the

automatic stay, applied to all actions and acts on and after January 7, 2015.

Catherine argues that the discharge injunction was violated when the

Government (1) used the theory of unjust enrichment in the district court, and (2) refused to release the lien on the Amherst Property.

Catherine first contends that unjust enrichment is a claim discharged in bankruptcy and thus the Government's use of it in determining Catherine's property rights in district court violated the discharge injunction. The Government argues that property rights are a creation of state law and that unjust enrichment is part of the applicable state law. And they assert they never sought to hold Catherine personally liable for her husband's restitution. The Government's argument appears to be, at least in part, that they are not a creditor of Catherine and that they are not asserting a claim against her personally. Yet they persist in claiming a right to pursue her property.

When addressing whether a creditor-debtor relationship existed in the context of Catherine holding property with a non-recourse mortgage, the court in *Lyrek* noted:

> The bank contends that as the debtors are not personally liable on the mortgage, there is no "debtor-creditor" relationship between the parties. According to the bank, the lack of such a relationship makes it impossible for the debtors to modify its rights in bankruptcy. In support of this argument, the bank stresses that it has no "claim," in a monetary sense, against the debtors. The debtors respond by pointing to the broad definition of "claim" under the Code, and further emphasize that the phrase "claim against the debtor" includes a claim against the "property of the debtor." *See* 11 U.S.C. § 101(2).

*In re Lyrek*, Case No. 94-11572, 1994 WL 16005187, at *2 (Bankr. W.D. Wis. Oct. 31, 1994). The Bank's position in *Lyrek* is extremely similar to the Government's position here. The Government's argument fails.

34

In examining what constitutes a claim, the Supreme Court held "'right to payment' [means] nothing more nor less than an enforceable obligation" and, in the context of a discharge "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 83-84 (1991). Further, "'claim against the debtor' includes claim against property of the debtor." *Id.* at 85. Despite asserting restitution should be recoverable "from all the assets in the marital estate," not just Mr. Henricks' interest,[27] the Government contends they "did not seek a money judgment against Catherine or any determination that she was personally liable for the restitution debt," ECF No. 144 at 7, and thus has not asserted a "claim" against Catherine.

The Government cannot rely on the fact that they never sought to "personally" collect from Catherine and reads what constitutes a claim too narrowly. The Government has asserted they have a right to collect from Catherine's *property*. Which, as held by the Supreme Court, is also a claim in bankruptcy. Admitting a debtor's lack of personal liability does not shield a creditor's action. The Government has been trying to reach Catherine's property (the tax refund, pension, and Amherst Property) by asserting that the property *should not* be hers—not that the property *is not* hers.

---

[27] *Brief in Opposition* to *Catherine Henricks' Motion to Limit Use of Enforcement Procedures*, Case No. 15-5, ECF No. 20, Exh. 15 at 22.

Catherine also contends that refusing to release the lien on the Amherst
Property violates the discharge injunction. Catherine, in part, argues the
Government never raised the issue in the district court and that the property
"was no[t] part of the Government's attempts to collect restitution as it was
clearly individual property, having resulted from a gift from Joseph Pavelski."
ECF No. 139 at 10. In making this argument Catherine ignores the district
court opinion, dated September 20, 2018, when the court rejected Catherine's
argument that "because the government is not seeking the determination of
any assets other than those discussed in this order, the court should deem any
future actions to collect assets to have been waived." ECF No. 139, Exh. 52 at
7. The court found:

> The government's lien that attached on January 10, 2014 extends
> to all assets in which defendant [John] had a property interest as of
> that date, whether the assets had been identified before then.

This determination was affirmed by the Court of Appeals. *See United
States v. Henricks*, 780 Fed. Appx. 370 (7th Cir. 2019). Catherine also argues
that any appreciation of property would belong to her. The district court
rejected this argument in the context of the A.J. Autobody assets and logically
that conclusion might extend to John's other community property interests.
But even though these arguments were rejected by the district court, there is
still a violation of the discharge injunction as far as the Government asserting
the lien attaches to Catherine's interest in the property.

Here, although more information would be needed to determine her
individual and marital property interests under state law, there are clear

36

violations of the discharge injunction. By insisting that the restitution lien

attaches to Catherine's property, the Government is asserting a claim. While

Catherine asserts the Government is trying to collect from her, the Government

says it is not asserting that the property *is not* hers, but in the interest of

equity and fairness, the property *should not* be allowed to *remain* hers. Had the

Government wanted to properly collect in *all* marital property despite the

restitution only being against John, they should have filed a

nondischargeability action in Catherine's bankruptcy and litigated the issue.

*See, e.g.*, *Taylor Freezer Sales of Arizona, Inc. v. Oliphant (In re Oliphant)*, 221

B.R. 506 (Bankr. D. Ariz. 1998). Their attempted end-run around bankruptcy

protections is not persuasive and cannot stand. This conclusion is not

disturbed by the district court's findings.

The Government sought to collect on a discharged debt. The district

court's findings that some of the property was *never* Catherine's does not

change the Government's argument that the property *is hers* but should still be

available to pay restitution to the victims of her husband's crime. Such

argument is much like asserting that a creditor "just filed a motion with the

court" but because the motion was either denied by the court or decided on

other grounds the creditor is absolved of their own actions. Having determined

that there are at least two violations of the discharge injunction, damages must

be addressed.

Unlike violations of the automatic stay, there is no specific Code

provision for remedies relating to violations of the discharge injunction. If a

party violates the discharge injunction, the debtor may seek to have the court

find the party in contempt. Authority to do this derives from sections 105 and

524(a)(2) of the Code. Although an adversary proceeding is needed to *obtain* an

injunction, it is not required to *enforce* one already in place. *See, e.g., Solow v.*

*Kalikow (In re Kalikow)*, 602 F.3d 82 (2d Cir. 2010). Contempt proceedings are

a contested matter under the Federal Rules of Bankruptcy Procedure. *See* Fed.

R. Bankr. P. 9014 and 9020. In the context of a discharge injunction:

> [A] court may hold a creditor in civil contempt for violating a
> discharge order if there is *no fair ground of doubt* as to whether the
> order barred the creditor's conduct. In other words, civil contempt
> may be appropriate if there is no objectively reasonable basis for
> concluding that the creditor's conduct might be lawful.

*Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019) (emphasis in original). So the

court must first determine whether the creditor violated the discharge

injunction. If the creditor did in fact take an act to collect a discharged debt,

the court must then determine "if there is *no fair ground of doubt* as to whether

the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1799.

The Government's position leaves no doubt that they were aware they

were trying to collect from Catherine's property. Their misguided reading of

"claim" is not the fair ground of doubt that the Supreme Court in *Taggart*

contemplated. This holds true especially given the level of sophistication and

experience the Government has in litigating matters across all courts.

### F.    ATTORNEY FEES AGAINST THE GOVERNMENT

Catherine has incurred attorneys' fees pursuing her claims for violation

of the stay and discharge injunction. While on some portion of those claims she

was unsuccessful both in the district court and in this Court, she prevailed on other of those claims. She seeks an award of attorneys' fees in an amount to be determined. Decision on this request is complicated because the party against whom fees are sought is the Government. This fact implicates the question whether fees can be awarded against the Government in this case.

"Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" *United States v. Bormes*, 568 U.S. 6, 9-10 (2012) (*quoting United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992)). That immunity can be abrogated by specific acts of Congress.[28] *Cent. Va. Cmty. College v. Katz*, 546 U.S. 356, 359 (2006). "In ratifying the Bankruptcy Clause [of the Constitution], the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.* at 378.

In discussing the *Katz* decision, the Supreme Court opined:

[E]verything in *Katz* is about and limited to the Bankruptcy Clause; the opinion reflects what might be called bankruptcy exceptionalism. In part, *Katz* rested on the "singular nature" of bankruptcy jurisdiction. That jurisdiction is, and was at the Founding, "principally *in rem*"—meaning that it is "premised on the debtor and his estate, and not on the creditors" (including a State). For that reason, we thought, "it does not implicate States' sovereignty to nearly the same degree as other kinds of jurisdiction." In remaining part, *Katz* focused on the Bankruptcy Clause's "unique history." The Clause emerged from a felt need to curb the States' authority. The States, we explained, "had wildly divergent schemes"

---

[28] Although, in *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004), the Supreme Court held that States are generally "bound by a bankruptcy court's discharge order no less than other creditors."

for discharging debt, and often "refus[ed] to respect one another's discharge orders." "[T]he Framers' primary goal" in adopting the Clause was to address that problem—to stop "competing sovereigns[]" from interfering with a debtor's discharge. And in that project, the Framers intended federal courts to play a leading role.

*Allen v. Cooper*, 140 S. Ct. 994, 1002 (2020) (internal citations omitted).

Although *Katz* dealt with State sovereignty, it applies to the Federal

Government.

Section 106 negates sovereign immunity in some circumstances. 11

U.S.C. § 106 reads:[29]

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> > (1) Sections 105, 106, ... 523, ... of this title.
> >
> > (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
> >
> > (3) the court may issue against a governmental unit an order, process, or judgment under such sections or the Federal

---

[29] The current version of section 106 was enacted on December 22, 2010. The reference to section 728 in (a)(1) was removed. This was the only change made from the October 22, 1994, version. Prior to the 1994 version, the section read:

106. Waiver of sovereign immunity
(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental units claim arose.
(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity--
(1) a provision of this title that contains creditor, entity, or governmental unit applies to governmental units; and
(2) a determination by the court of an issue arising under such a provision binds governmental units.

Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, **but not including an award of punitive damages**. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(Emphasis added). Part of section 106[30] "authorizes monetary recovery from a governmental unit if the governmental unit has a claim against the estate, the debtor's claim against the governmental unit is property of the estate, and the two claims arose from the same 'transaction or occurrence.'" *Taborski v. United*

---

[30] At the time of the *Taborski* decision, the court was referencing subsection (a) of 106. The language from subsection (a) became subsection (b) when the statute was revised in 1994.

*States I.R.S.*, 141 B.R. 959, 964 (N.D. Ill. 1992) (quoting *United States v. McPeck*, 910 F.2d 509, 512 (8th Cir. 1990)).

Although the Government did not file a proof of claim against Catherine's estate, it repeatedly asserted one. Courts have held that waiver under section 106 does not necessarily require a formal proof of claim to be filed. *See, e.g.*, *In re Weatherley*, Case No. 94-12562DAS, 1994 WL 463974, at *2 (Bankr. E.D. Pa. Aug. 23, 1994) ("Most [courts] have found that, by attempting to seize property of a debtor in violation of the automatic stay, the IRS has asserted at least an informal proof of claim against a debtor. Thus, it has waived its sovereign immunity."); *Fingers v. United States, Dep't of Treasury, I.R.S. (In re Fingers)*, 148 B.R. 586, 590 (Bankr. S.D. Ca. 1993); *Aer-Aerotron, Inc. v. Texas Dep't of Transp. (In re Aer-Aerotron, Inc.)*, 172 B.R. 202 (Bankr. E.D.N.C. 1994). In fact, "the mere existence of a claim has been found to be sufficient participation in the bankruptcy case to trigger the waiver of *federal* sovereign immunity." *Aer-Aerotron,* 172 B.R. at 204. Courts often award attorneys' fees against government entities where a willful violation of the stay has occurred. *See, e.g.*, *Hanna Coal Co., Inc. v. I.R.S.*, 218 B.R. 825 (W.D. Va. 1997).

The Government pursued collection from Catherine's interest in community property. It took the position that all of a tax refund and a pension funded from her earnings were available for her spouse's criminal restitution because those assets were tainted by his crimes and should not be considered hers. And it argued any position Catherine took that her interest in the Amherst Property was individual property or should not be available for

restitution "should be disregarded." Case No. 15-5, ECF No. 21 at 8 n.2. It
continued to advance that position while arguing that "the United States is not
attempting to enforce its lien against defendant's property interest at this time."
ECF 139-17 at 7 n.2. The modification of the stay permitted the Government to
ask the district court whether property that was not sequestered was the
individual property or Catherine or community/marital property. Case No. 15-
5, ECF No. 378 at 2, ¶ 1. The parties did so for the tax refund and pension. The
question on the Amherst Property was not addressed because the Government
chose not "to enforce" the lien at that time. This merely meant it did not take
steps to execute or foreclose the lien. Instead it chose to simply sit back and
wait. When Catherine sought to refinance, it refused to release the lien waiting
to, apparently, be paid to have the lien removed.

The former actions occurred largely before the discharge, while the latter
was post discharge. This distinction is important because whether sovereign
immunity is abrogated is dependent on whether the Government's actions are
covered by 11 U.S.C. § 106.

When "the governmental entity does not assert a claim against the estate
or attempt to collect from estate assets, but merely asserts a right to payment
from the debtor after discharge and from assets that are no longer part of the
estate, the purposes underlying section 106(a)[31] are not implicated." *United
States v. Germaine (In re Germaine)*, 152 B.R. 619, 624 (B.A.P. 9th Cir. 1993).

---

[31] As previously noted, the text referred to as 106(a) became the text of 106(b) in the
1994 amendments.

Accordingly, to recover attorneys' fees from the Government for a discharge injunction violation, Catherine would need to demonstrate subsection (c) of 106 is applicable.

## CONCLUSION

The district court determined Catherine had no interest in the sequestered assets. Therefore, there was no violation of the automatic stay with regard to any of the sequestered assets, and the Government may submit an amended order in the adversary proceeding so confirming.

The Government willfully violated the automatic stay when it sought to recover Catherine's interest in marital property in satisfaction of the restitution order against John. Arguments have not been made about damages. But under the logic applied in the February 2016 Order from this Court, Catherine is entitled to reasonable attorneys' fees. Presentation of such fees and determination of reasonableness are the subject of a further hearing.

The Government continued their efforts to collect Catherine's interest in the tax refund, retirement account, and the Amherst Property after Catherine received her discharge. Therefore, the Government also violated the discharge injunction. The Government never made a claim against Catherine "personally" but has consistently asserted a claim against Catherine's property.

All of Catherine's property at issue is exempt pursuant to her claim of unchallenged exemptions. As a policy matter, exemption rights are to be construed liberally in Debtor's favor. The Government's lien against the Amherst Property is avoided pursuant to 11 U.S.C. § 522(f)(1).

44

The Court will schedule a further hearing for scheduling with respect to any presentation of evidence on fees the parties may raise related to any claim for attorneys' fees.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: July 12, 2021

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge